UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

LARRY W. CAMPBELL,

        Defendant.

NO. CR. S-03-0483 WBS

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

----oo0oo----

This matter came on for trial by the court, sitting without a jury, pursuant to a written waiver of jury trial knowingly and voluntarily executed by the defendant with the consent of the government and approval of the court, pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure, on August 9 and 11, 2005. Defendant was present and represented by Assistant Federal Defender Jeffrey L. Staniels; and the United States was represented by Assistant U.S. Attorneys Kymberly A. Smith and Samantha Spangler.

Defendant is charged with knowing possession of a firearm while subject to a domestic restraining order, in violation of § 922(g)(8). The Indictment charges that the

1

defendant, on May 21, 2003, knowingly possessed two firearms:  a Springfield Armory, .45 caliber semi-automatic pistol, bearing Serial Number NM124347; and a Jennings, .22 caliber semi-automatic pistol, bearing Serial Number 417659, both of which had previously been transported in interstate or foreign commerce.

The court having received and considered the evidence, both oral and documentary, submitted on behalf of both the government and the defendant, now finds the following facts beyond a reasonable doubt.

<u>Findings of Fact</u>

1.  On April 18, 1996, Lana Lingan, defendant's ex-wife, obtained her first permanent restraining order[1], from the Placer County Superior Court, Judge Frances Kearney presiding, which ordered that the defendant shall not "contact, molest, attack, strike, threaten, sexually assault, batter, telephone, or otherwise disturb the peace of" his ex-wife.  (Placer County Superior Court Case No. SDR7076; Government's Trial Exhibit ("GTE") No. 19).  This order was set to expire April 18, 1999. <u>Id</u>.; California Family Code ("CFC") §6345(a).  The hearing from which this order issued was, according to this order, held on April 8, 1996.  This order included an express firearm restriction by including the following language:

> Any person subject to a restraining order is prohibited from obtaining or purchasing or attempting to purchase a firearm by [California] Penal Code section 12021. Such conduct may be a felony and punishable by a $1,000 fine and imprisonment . . . .

<u>Id</u>.

---

[1]     As opposed to a temporary/ex parte restraining order. <u>Cf</u>. California Family Code § 6320.

2

2.   The next series of protection orders obtained by Ms. Lingan which protected her from the defendant were all issued by Judge John Cosgrove, also of the Placer County Superior Court. Judge Cosgrove was also the judge assigned to adjudicate the divorce, custody and other domestic disputes between Ms. Lingan and the defendant.  Judge Cosgrove issued:  (a) a Stipulated Judgment on Reserved Issues dated February 1, 1999, which included a "no harassment" clause; (b) a Restraining Order After a Hearing[2] dated November 24, 1999 (the hearing of which, according to the order, apparently occurred on November 12, 1999); and (c) a Findings and Order After Hearing dated December 8, 1999 (which was aparerently also based on the November 12, 1999, hearing).  (GTE No. 18, 15, 14).

3.   All three of these orders appear to be intended to work in tandem and all address protecting Ms. Lingan from the defendant.  <u>Id</u>.  In addition to the express firearm restriction notice (equivalent to the firearm restriction in the April 18, 1996 restraining order), the November 24, 1999 restraining order also required firearm relinquishment within 24 hours of its issuance.  (GTE No. 15, p.95).  While there is no date of expiration on either the February or the December 1999 orders, the November 24, 1999 - ("CLETS"[3]) order was set to expire on November 24, 2002.

_____

[2]   This order had both a California Law Enforcement Telecommunications System (CLETS), and Violence Against Women Act Notice.  (GTE No. 15, p.96).

[3]"CLETS" stands for California Law Enforcement Telecommunications System.

3

4.    On November 6, 2002, Ms. Lingan, who was represented by Attorney Karen Easter Gurwell, filed a timely and properly filed Motion to Extend the November 1999 Restraining Order.  (GTE Nos. 8-12).  That domestic relations matter had, by this time, been transferred to Orange County on Ms. Lingan's successful request for change of venue.  (Government Witness Testimony ("GWT") Judge Nancy Pollard).  That case had also been randomly assigned to Judge Pollard, in Family Division of the Orange County Superior Court.  <u>Id</u>.

5.    Judge Pollard has been a judge of the Orange County Superior Court since January 7, 1997.  Prior to her appointment to the bench, Judge Pollard was in private practice where she handled immigration and family law matters.  The last 6 ½ years of Judge Pollard's practice were devoted to family law.  (GWT N. Pollard).

6.    While currently assigned to the "direct calender assignment," Judge Pollard has handled a variety of family law related issues.  <u>Id</u>.  Judge Pollard also supervised the "Dedicated Domestic Violence Calender" for 3 ½ years during which time she handled at least 3,000 civil domestic restraining orders.  <u>Id</u>.

7.    Due to the highly litigious nature of the <u>Lingan v. Campbell</u> domestic matter, and due to the frequent and voluminous filings by the defendant, Judge Pollard required the Clerk of the Court to bring, as received, all pleadings filed in this case to her chambers for her immediate review.  (GWT N. Pollard).  This was a departure from Judge Pollard's regular practice of not reviewing a matter until the night before the hearing.  <u>Id</u>.

4

8.   Ms. Lingan's November 6th filing included, *inter alia*: an application and notice of motion; a memorandum of points and authorities; a declaration; and a supplemental declaration. (GTE Nos. 8-12; GWT N. POLLARD).

9.   On November 12 and 18, 2002, defendant filed the following two documents:  (a) an Orange County Superior Court "Notice of Motion" form on which he checked "other" and hand-wrote "Response;" and (b) another Notice of Motion form, on which he checked "visitation" and hand-wrote "venue, trial."  (GTE Nos. 37(a), 37(b)).  Neither of these pleadings (nor any attachments thereto) state or mention any information which could reasonably be construed as a denial of or in any way related to Ms. Lingan's claims in support of her motion to extend the 1999 restraining order.  <u>Id</u>.

10.   The parties have stipulated that the motion on the hearing to extend the restraining order was scheduled for and did occur on December 6, 2002 (GTE Nos. 5, 42).

11.   The parties have also stipulated that Lana Lingan, Karen Easter Gurwell (Attorney for Lana Lingan), Harold LaFlamme (Guardian Ad Litem), and the defendant were all present at the December 6, 2002 hearing before Judge Pollard.  (GTE No. 5, 42).

12.   The parties have stipulated that the defendant appeared at the December 6, 2002 hearing via telephone by virtue of his own request pursuant to the American With Disabilities Act ("ADA").  (GTE Nos. 5, 6, 7, 42).  Judge Pollard granted the defendant's request to appear at the December 6, 2002 hearing via telephone by way of a minute order.  (GTE No. 7; GWT N. Pollard).

13.   Defendant has been determined a "vexatious

5

litigant" by the Superior Court of Placer County, and has historically, routinely filed letters and motions with the Superior Court of Orange County. (GWT N. Pollard). Defendant himself testified that he has, in *pro per* status, filed at least two appeals (one in which he prevailed), one motion and one judicial recusal. (Defense Witness Testimony ("DWT") Larry W. Campbell). Defendant also testified that he enlists the legal assistance of his brother, who he indicated has some legal background. Id.

14. The court takes judicial notice that in the years 2003 and 2004 defendant also filed eleven civil actions in this court, in each case representing himself without an attorney.

15. Defendant was personally present at all times during the trial in this case, and at all times appeared alert, appeared to engage his legal counsel and when he took the stand seemed to understand the legal process and his access to the court system, and seemed assertive both in pursuing his legal rights and in delivering his testimony.

16. At the time Judge Pollard heard defendant's matter, there was no statutory or case law guidance for judges faced with deciding whether to extend a civil domestic restraining order. (GWT N. Pollard; CFC §6345(a); Cf. Ritchie v. Konrad, 115 Cal.App.4th 1275 (2004). AS Judge Pollard testified, there were and are three ways that an Orange County Superior Court judge can obtain the information necessary to grant or deny a motion to extend a restraining order pursuant to CFC §6345: (a) a judge may take testimony from one or both parties; (b) a judge may accept evidentiary proffers subject to cross

6

examination, and/or (c) a judge may decide the matter completely by way of written pleadings and declarations through a process referred to as "being Reiflerized" which is a local term of art indicating that a judge hearing a domestic violence restraining order matter may decide motions solely by the pleadings.  Id.; Reifler v. Superior Court, 39 Cal.App. 3d 479 (May 24, 1974).  At the time of that hearing, the court was not required to utilize more than one of these methods in deciding whether to grant a non-contested motion to extend a restraining order.  Id.

17.  In preparation for the hearing on Ms. Lingan's motion to extend the 1999 restraining order, Judge Pollard carefully and thoroughly reviewed and considered the following documents from the record:

(a) Lana Lingan's: application and notice of motion; memorandum of points and authorities; declaration in support of the motion; and a supplemental declaration in support of her motion (GTE Nos. 8-12);

(b) Judge Cosgrove's December 8, 1999, November 24, 1999, and February 1, 1999, orders (GTE Nos. 14, 15, 18);

(c) Other documents and letters filed by the defendant;

(d) Her personal observations about the defendant's emotional nature;

(e) And although difficult to understand, non-responsive and filed in violation of the state court's filing rules, Judge Pollard also reviewed the defendant's so-called "response" to Ms. Lingan's motion to extend the restraining

order[4] as well as his request for trial.  (GTE Nos. 5, 37(a), 37(b), GWT N. Pollard).

The defendant verified on the state court record that these documents were his "responsive declaration" to Ms. Lingan's motion to extend restraining order; and upon receipt of the defendant's claim that Judge Cosgrove's November 1999 order was somehow null and void, Judge Pollard also searched the files for some indication that the 1999 order had been vacated or set aside but found no such documentation.  (GTE. No. 5, p.5, lines 15-17; GWT N. Pollard).

18.  Judge Pollard did not review the circumstances, hearing transcript or related information about how or why the November 1999 order was issued.  (GWT N. Pollard).  Judge Pollard did, however, notice that a church and a school had successfully joined the December 1999 restraining order, which stood out to her because it was an unusual circumstance.  Id.

19.  Although there was no statutory or case authority to guide her, Judge Pollard instituted her own "reasonableness standard" when deciding whether to extend a previously issued domestic restraining order.  Id.  Judge Pollard required that the moving party demonstrate a continued fear, and that such continued fear was reasonable.  Id.  In light of her experience as supervisor of the Dedicated Domestic Violence Calender, Judge Pollard felt that respondents were entitled to the "respect" of a hearing even if they did not file a written response or otherwise

---

[4]  Several other documents improperly faxed to the Family Division of the Superior Court of Orange County by the defendant were returned to him unfiled.

1  answer the pleadings.  Id.  Even if a moving party's motion to

2  extend restraining order was completely uncontested, Judge

3  Pollard routinely held hearings in order to ensure that the

4  moving party's continued fear was reasonable.  Id.

5       20.  Judge Pollard was very familiar with the Lingan v.

6  Campbell matter because it had from the beginning been very

7  litigious and voluminous.  Id.  When she received the case from

8  Placer County, it spanned two "Xerox boxes" which she described

9  as approximately 1' x 2' in size.  Id.  Judge Pollard also

10 explained that, in addition to creating a new system of review in

11 order to keep up with the defendant's many filings, she was in

12 constant contact with her chambers clerk, as well as Jan Shaw

13 from the courthouse Clerk's office.  Ms Shaw was designated as

14 the point of contact for all pleadings filed by the defendant

15 with the court Clerk as his voluminous pleadings were a heavy

16 burden for the Clerk's office.  Id.

17      21.  On the day of the December 6, 2002, hearing Judge

18 Pollard was prepared to take testimony or accept other evidence

19 and accept proffers of the parties regarding Lingan's motion.

20 Id.  In fact, Judge Pollard specifically wanted to hear from the

21 defendant about his legal argument as she could not understand

22 his written "response." (GTE 5, GWT N. Pollard).  Judge Pollard

23 also noted that the defendant had not, in either the November 12

24 or 18 filings, denied, refuted or rebutted Ms. Lingan's claims of

25 continued harassment and threatening behavior.  (GWT N. Pollard;

26 GTE 37(a), 37(b)).

27      22.  During the hearing, Judge Pollard informed the

28 defendant that she had received some documents from him and

verified with him that those were his "response" to Ms. Lingan's motion. Id.; GTE No. 5. Judge Pollard also asked defendant if there was anything else he had to say, which she intended as his opportunity to address the claims made by Ms. Lingan in her pleadings to extend the restraining order. Id.

23. Instead of responding to the legal issues at hand, defendant responded that he wanted a continuance and a contested trial in order to subpoena judges, attorneys and others in Placer County regarding the December 1999 restraining order. Id.

24. When defendant did nothing to deny, refute or rebut Ms. Lingan's claims on the record, and due to the fact that the pleadings were filed in an inappropriate manner (together with the fact that the defendant failed to address the matter of whether the restraining order should have been extended), Judge Pollard treated the defendant as a "default" and granted Ms. Lingan's motion to extend the restraining order. Id.

25. Judge Pollard did not grant defendant's request for a continuance based on his claim that he did not receive the attachments to the supplemental declaration filed by Attorney Gurwell because she credited Ms. Gurwell's sworn testimony that the documents had been properly served on the defendant over his claim that he did not receive the documents. Id.; GTE 5.

26. Judge Pollard did not grant defendant's request for either a continuance or his request for a trial because the reason the defendant gave for wanting the continuance and the trial - that is to prove that the November 24, 1999 restraining order was "null and void" by subpoenaing several judges and at least one attorney - was neither relevant nor germane to Ms.

Lingan's motion to extend the order.  (See GTE No. 5, p. 5, lines 17-25; GWT N. Pollard).  Defendant indicated on the record that he intended to call as witnesses:  a person he referred to as Denize Gertz (believed to mean "Dirks"), his previous attorney Donna Decuir, Judge Benesse, Judge Cosgrove and Judge Couzens. (GTE No. 5, p. 5)

27.  The legal standard for a criminal domestic restraining order requires proof beyond a reasonable doubt, but in a civil domestic restraining order such as the one issued by Judge Pollard the moving party need only show a reasonable basis by a preponderance of the evidence.  (GWT N. Pollard).

28.  Judge Pollard was a credible witness at this trial and indicated that she gave serious consideration to both sides of this issue, searched the file to verify or reject defendant's claims and up and through the hearing maintained commitment to giving the defendant an opportunity to refute, deny, or rebut Ms. Lingan's claims against him.  Id.  Judge Pollard indicated that she would have received evidence from the defendant had he provided any, which could have been as simple as him denying the behavior or claiming that Ms. Lingan was somehow dishonest in her pleadings.  Id.

29.  Judge Pollard credibly testified that she used a reasonableness standard when she heard Ms. Lingan's motion for a restraining order, requiring Ms. Lingan to show that she was reasonable in having a continuing fear of the defendant since the 1999 protection order was issued.  Id.

30.  Judge Pollard credibly testified that she did not grant Ms. Lingan's request to extend the protection order merely

1   because she asked for it.  Id.[5]

2         31.  The hearing which took place before Judge Pollard

3   lasted approximately 30 minutes.  (GWT N. Pollard).

4         32.  State court judges have wide discretion in

5   determining whether to grant continuances, which are generally

6   discouraged absent a showing of good cause.  California Rules of

7   Court §375(c).

8         33.  Nowhere in the California Family Code, nor in any

9   case law issued at the time the hearing in this case took place,

10  was the state court required to grant the defendant a trial on

11  the motion to extend a restraining order.  See Reifler, 39

12  Cal.App.3d 479.

13        34.  On December 6, 2002, the defendant, Larry W.

14  Campbell, became the subject of Orange County Superior Court

15  Domestic Restraining Order No. 02D006203, issued by Judge Nancy

16  Pollard.  (See GTE Nos. 3, 5).

17        35.  On February 8, 2003, Judge Pollard amended that

18  order ("Amended I")(GTE p.12) adding conditions 15-17 which were

19  attached to the Amended I order.  (GWT N. Pollard).

20        36.  On March 27, 2003, Judge Pollard again amended

21  that order ("Amended II"). (Id.; GTE No. 1).  This amendment was

22  due to the fact that the Amended I order incorrectly stated the

23  defendant/respondent's name as "Larry R. Campbell" as opposed to

24

25         [5]   The hearing transcript shows that Judge Pollard also
26  denied the defendant's request for written findings.  However,
    written findings are not required for matters less than eight
27  hours in length provided that the judge, if asked, makes an oral
    statement of decision in the presence of the parties.  California
28  Code of Civil Procedure §632.

1   the proper "Larry W. Campbell." This was brought to Judge

2   Pollard's attention by Petitioner Lingan's counsel's letter.   Id.

3         37.   The December 6, 2002 and the March 27, 2003,

4   restraining orders issued by Judge Pollard are the "predicate

5   order(s)" which trigger §922(g)(8).

6         38. Defendant was personally served with the Amended II

7   predicate order on April 21, 2003, by Placer County Deputy

8   Sheriff Nelson Resendes. (Government's Exhibit Nos. 1(b), 1(c);

9   GWT Nelson Resendes). At the time of service, the defendant was

10  incarcerated at the "main jail" located in Auburn, Placer County,

11  California.   Id.

12        39.   Deputy Resendes has been employed by the Placer

13  County Sheriff's Department for approximately six years.   Id.   At

14  the time he served the defendant with the Amended II order, he

15  was assigned to the main jail where he was responsible for a

16  variety of inmate related matters.   Id.

17        40.   Among his duties at the main jail was the periodic

18  assignment of being a "Floor Officer." Floor Officers are

19  responsible for extra duties including acting as process server

20  to all of the inmates at the jail.   Id.

21        41.   As Deputy Resendes testified, the protocol for

22  personally serving inmates with court documents was to either

23  call the inmate to the front office of the jail, or to meet the

24  inmate at his cell.   Id.   Deputy Resendes would then provide the

25  inmate with the service copy and go over the document with the

26  inmate.   Id.   If and only if the inmate indicated that he

27  understood the nature and terms of the served papers would

28  Deputy Resendes then execute the proof of service document.   Id.

13

This document was put into a bin for later filing with the court. _Id_. Deputy Resendes implemented this service-procedure because it did not make sense to him that you could serve someone without them understanding what they received. _Id_.

42. Deputy Resendes served at least 100 inmates with court papers during his assignment to the Placer County main jail and he executed the related proofs of service to be filed with the court. _Id_. While Deputy Resendes does not specifically remember serving the defendant, he always used the same protocol to serve the inmates and has no reason to believe that his service protocol would have differed with the defendant in any way. _Id_.

43. There are two versions of the service of process on the defendant of the Amended II order because Deputy Resendes was asked to re-execute the proof of service to be in compliance with court rules which required the proof of service form to be typed. (_Id_.; GTE Nos. 1(b), 1(c))

44. The December 6, 2002, and the Amended II order are charged in the indictment as the predicate orders triggering the violation of §922(g)(8). The Amended II order supercedes the December 6, 2002 order. The protected party of both the December 6, 2002 and the Amended II predicate protection orders is Lana Lingan.[6]

45. The parties have stipulated that Lana Lingan is the defendant's "intimate partner" within the meaning of

---

[6] The order also protected Ms. Lingan's two daughters, one of whom is also the defendant's daughter. Because they are both minors their names are not included in the record.

1  §922(g)(8) in that she is the defendant's ex-wife, formerly
2  cohabitated with the defendant and is mother of their daughter.

3        46.  The parties have further stipulated that:

4        (a) The December 6, 2002, restraining issued by
5  Judge Nancy Pollard of the Superior Court of Orange County
6  contained the terms restraining the defendant, LARRY W. CAMPBELL,
7  from harassing, stalking and threatening an intimate partner and
8  child of said intimate partner;

9        (b)  This order also contained terms which
10 explicitly prohibited the use, attempted use or threatened use of
11 physical force against said intimate partner or child that would
12 reasonably be expected to cause bodily injury; and

13       (c) This order does not expire until December 6,
14 2050.[7]

15       47.  The December 6, 2002, and the March 27, 2003
16 orders, also:

17    A.  Required the defendant to stay at least 100 feet
          away from Lana Lingan, her home, her place of
18        employment, her childrens' school, her car, and
          away from Lingan's church and school; and
19
20    B.  Required the defendant to relinquish any firearms
          that he possessed within 24 hours of the issuance
21        of the order.

22 (GTE Nos. 1, 3).

23       48.  Judge Pollard's restraining orders extend the
   restraining order issued against the defendant on November 24,
24 1999, by Judge Cosgrove of the Placer County California Superior
25 Court.  (GTE Nos. 1, 3, 15)

26

27 _____

28      [7]   Without an express date the order would expire in 3
   years.  CFC §6345(c).

49.   Pursuant to California Family Code §6345, orders of protection expire three (3) years from the date of issuance unless successfully extended upon motion of either party; there is no statutory mandate for the expiration of an extension of a previously issued restraining order; and a party who has been restrained may ask the court to reconsider via motion.  See California Family Code §6345.

50. In addition to the stipulation as stated in GTE No. 42, the Amended II predicate order *inter alia*:

C.   Ordered the defendant not to: harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy the persona property of, disturb the peace of, keep under surveillance, or block the movements of Lana Lingan et. al.;

D.   Ordered the defendant not to:  contact (either directly or indirectly), or telephone, or send messages by mail or email to Lana Lingan et. al.;

E.   Required the defendant to stay at least 100 feet away from Lana Lingan, her home, her place of employment, her children's school, her car, and away from Lingan's church and school;

F.   Notified the defendant that he could not own, possess, have, buy, receive, or try to receive, or in any other way get a gun or firearm;

G.   Required the defendant to sell to a licensed gun dealer or turn in to police any guns or firearms that he possessed or controlled within 24 hours of the issuance of the order;

H.   Required the defendant to bring a receipt to the court within 72 hours of receiving the order to prove that the guns or firearms have been turned in or sold; and

I.   Included yet another reminder with a picture that the defendant was not allowed to:

...own, have possess, buy or try to buy, receive ro try to receive, or otherwise get a gun while this order is in effect.  If you do, you can go to jail and pay a $1,000 fine. You must sell to a licensed gun dealer or turn-in to police any guns or firearms that

16

1　　　　　　you have in your control.  The judge will ask
2　　　　　　you for proof that you did so.  If you do not
　　　　　　　obey this order, you can be charged with a
3　　　　　　crime.  Federal law says you cannot have guns
　　　　　　　or ammunition while this order is in
4　　　　　　effect...This is a Court Order...

5　　(GTE No. 1, paragraphs 5, 6, 10, 11, 20);

6　　　　　51.  Ms. Lingan's previous Attorney, Denise Dirks,

7　　successfully obtained an order restraining the defendant from

8　　harassing her.  (GTE No. 28).  This order also contains an

9　　express firearm restriction.  Id.

10　　　　　52.  In September 2003, the defendant made statements

11　　to Special Agent Erik Crowder that he was aware of the December

12　　6, 2002, restraining order but claimed that it did not have a

13　　firearms restriction.  (GWT E. Crowder).  The defendant verified

14　　these statements at trial by testifying that he in fact received

15　　a copy of the December 1999 restraining order by mail.  (DWT L.

16　　Campbell).  Contrary to the defendant's statements, this order

17　　has at least two express firearm restriction notices.  (GTE No.

18　　3).

19　　　　　53.  During the above described interview between the

20　　defendant and Special Agent Crowder, the defendant made

21　　additional statements that he received personal service of the

22　　Amended II predicate order while incarcerated.  (GWT E. Crowder).

23　　The defendant also stated that he chose to disregard it or, in

24　　Agent Crowder's words, "blow it off," because he did not think

25　　the order was valid.  Id.

26　　　　　54.  All of the statements made by the defendant to

27　　Special Agent Crowder were voluntary, at the defendant's home

28　　where he was not detained, not handcuffed, not threatened or

promised anything and was free to terminate the interview at any time. <u>Id</u>. These statements were witnessed by ATF Special Agent Sarah Lewis. <u>Id</u>.

55. The parties have stipulated that each of the firearms described above in Paragraph 51 had, prior to May 21, 2003, been transported in interstate or foreign commerce. That is:

(a). The Springfield Armory .45 caliber semi-automatic pistol (NM124347), was manufactured outside of the state of California before it was seized from the defendant's home located at 1116 Cottonwood Drive, Roseville, in the state and Eastern District of California; and

(b). The Jennings .22 caliber semi-automatic pistol (417659), was manufactured in the state of California but was then shipped to Carson City, Nevada, and then shipped to Reno, Nevada before it was transported back to and later seized from the defendant's home located at 1116 Cottonwood Drive, Roseville, in the state and Eastern District of California.

56. The parties have stipulated that through testing by the Bureau of Alcohol Tobacco and Firearms, it has been determined that the two firearms identified in Paragraphs 51 and 52 each meet the definition of a "firearm" as defined by 18 U.S.C. §921(a)(3).

57. The defendant has since April 18, 1996, and through November 6, 2050, been subject to a restraining order protecting Lana Lingan from the defendant. (GTE Nos. 1, 2, 3,

14, 15, 18, 19).  With the exception of the February 1, 1999, and the December 8, 1999 (GTE Nos. 14, 15), orders, each of these orders contains a firearm restriction and each of the orders tracks the language of 18 U.S.C. §922(g)(8)(B) and (8)(C)(ii).

58.  This court has adopted and incorporated into this trial record its findings of fact and conclusions of law with respect to the evidentiary hearing which determined that the search warrant executed at the defendant's residence on May 21, 2003, was legally obtained and executed.

59.  During trial, this court granted the government's request to dismiss from the indictment all of the firearms which were suppressed (i.e., all of the firearms seized from the defendant's uncle's home), as well as the muzzle loader which, due to the fact that it is an "antique," does not meet the definition of a "firearm" within the meaning of §921.

60.  In the Supplemental Stipulations of the Parties filed with this court, the defendant stipulates to the fact that he knowingly possessed the firearms which were seized from his home on May 21, 2003, pursuant to a validly issued and executed search warrant, to wit:  the Springfield Armory .45 caliber semi-automatic pistol (NM124347), and The Jennings .22 caliber semi-automatic pistol (417659); these firearms are charged in the indictment.

## Conclusions of Law

61.  This court has jurisdiction over this case pursuant to 18 U.S.C. §3231.

62.  Section 922(g)(8) makes it illegal for a "prohibited person," that is, someone who is subject to a "court

19

order," to possess a firearm provided that the "court order":
was issued after a hearing to which the defendant had actual
notice and at which he had the opportunity to participate;
protects the defendant's intimate partner or child of the
intimate partner; restrains the defendant from harassing,
stalking, or threatening the defendant's intimate partner or
child of such intimate partner or of the defendant; and by its
terms explicitly prohibits the use, attempted use, or threatened
use of physical force against the defendant's intimate partner or
child that would reasonably be expected to cause bodily injury.
18 U.S.C. §922(g)(8).

63. In order to prove the offense charged in the
Indictment, the government must prove each of the following
elements beyond a reasonable doubt:

| | |
|---|---|
| First: | The defendant knowingly possessed at least one firearm as charged in the indictment; |
| Second: | The firearm or firearms had been shipped or transported from one state to another, or from a foreign nation to the United States; and |
| Third: | At the time he possessed the firearm or firearms, the defendant was subject to a court order. |

64. It is not necessary for the government to prove
that the defendant actually knew that the firearm or firearms
were, or had at any time prior to or during his possession of
them, been in or affecting commerce. Although the indictment
alleges that the defendant possessed two firearms, possession of
one firearm is sufficient to find him guilty of this charge.

65. The term "firearm" means any weapon which will or
is designed to or may be readily converted to expel a projectile
by the action of an explosive. 18 U.S.C. § 921(a)(3).

66.   The term "court order" as stated in Section 922(g)(8) of Title 18 of the United States code, means that there was an order issued by a court which:

    A.    Was issued after a hearing of which the defendant received actual notice, and at which the defendant had an opportunity to participate;

    B.    Restrains the defendant from harassing, stalking, or threatening the defendant's intimate partner or child of such intimate partner or of the defendant, **or** engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

    C.    (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; **or** (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against the defendant's intimate partner or child that would reasonably be expected to cause bodily injury.

67.   The term "intimate partner" means the defendant's spouse, the defendant's former spouse, an individual who is a parent of the defendant's child, or an individual who co-habitates or has cohabited with the defendant.  18 U.S.C. § 921(a)(32).

68.   Section 922(g)(8) is silent on the type of participation required but clearly states that the defendant is only entitled to the "opportunity to" participate - this statute does not require actual or meaningful participation.  Id.

69.   Section 922(g)(8) does not require that the defendant receive service of (personal or otherwise), or have personal knowledge that the court order which proscribes possession of the firearm in fact, issued.  United States v. Napier, 233 F.3d 394, 399 (6th Cir. 2000); United States v. Coccia, 249 F.Supp.2d 79, 81 (D.Mass. 2003).  This statute

requires very minimal due process and is, practically speaking,
only meant to protect a defendant from being railroaded by a
completely *ex parte* proceeding.

70.   In light of the stipulation of the parties as
stated in GTE No. 42 (paragraph 2), the government has met its
burden of showing beyond a reasonable doubt that both of the
firearms seized from the defendant's residence on May 21, 2003,
to wit: the .45 caliber Springfield Armory, and the .22 caliber
Jennings semi-automatic pistol, as charged in the indictment,
traveled in interstate or foreign commerce sometime before the
defendant's possession of each of them, and therefore, the
interstate nexus requirement for §922(g)(8), is, beyond a
reasonable doubt, met as to both firearms.

71.   In light of the stipulation of the parties as
stated in GTE No. 42 (paragraphs 3, 4), the government has met
its burden of showing beyond a reasonable doubt that both of the
firearms seized from the defendant's home on May 21 2003, to wit:
the .45 caliber Springfield Armory, and the .22 caliber Jennings,
as charged in the indictment, meet the definition of a "firearm"
pursuant to Title 18, U.S.C., §921(a).

72.   In light of the stipulation of the parties as
stated in GTE No. 42 (paragraph 7),the government has met its
burden of showing beyond a reasonable doubt that Lana Lingan is
the defendant's intimate partner within the meaning of Title 18,
U.S.C., §922(g)(8), in that she is the defendant's ex-wife, she
formerly cohabitated with the defendant and is the mother of
their daughter.

73.   In light of the stipulation of the parties as

22

1   stated in GTE No. 42 (paragraph 5), and the plain wording of the

2   documents themselves (GTE Nos. 1, 3); the government has met its

3   burden of showing beyond a reasonable doubt that the predicate

4   orders, as charged in the indictment, to wit:  the domestic

5   restraining order issued by Judge Nancy Pollard on December 6,

6   2002, and the Amended II domestic restraining order issued by

7   Judge Pollard on March 27, 2003, track the language which

8   triggers application of §922(g)(8) in that these orders restrain

9   the defendant, LARRY W. CAMPBELL, from harassing, stalking and

10  threatening an intimate partner and child of said intimate

11  partner; and contain terms which explicitly prohibited the use,

12  attempted use or threatened use of physical force against said

13  intimate partner or child that would reasonably be expected to

14  cause bodily injury; this Court further finds that this order

15  does not expire until December 6, 2050.

16          74.  In light of the stipulation of the parties as

17  stated in GTE No. 42 (paragraph 6), GTE No. 5 and the testimony

18  of Judge Pollard, the government has met its burden of showing

19  beyond a reasonable doubt that the defendant received "actual

20  notice," within the meaning of Title 18, U.S.C., §922(g)(8), of

21  the hearing from which the predicate orders issued based on the

22  defendant's appearance by telephone at the hearing.  This Court

23  further finds that this hearing took place on December 6, 2002,

24  before Judge Pollard, Orange County Superior Court, California

25  and also present at this Court proceeding were Attorney Karen

26  Easter Gurwell, Attorney Harold LaFlamme, and Lana Lingan.  (GWT

27  N. Pollard; GTE 5).

28          75.  In light of the stipulations of the parties as

23

stated in GTE 42 (paragraph 6), and the testimony of Deputy
Resendes, the government has met its burden of showing beyond a
reasonable doubt that the defendant received personal service of
the March 27, 2003 Amended II order on April 21, 2003.

76.  The Ninth Circuit has yet to expressly determine
what is meant by an "opportunity to participate" within the
meaning of Title 18, U.S.C., §922(g)(8)(A).  This court therefore
looks to the decisions of the Sixth, Fifth and Seventh Circuits.

77.  The Sixth Circuit has held that the term "hearing"
as defined in §922(g)(8) is unambiguous.  United States v. Calor,
340 F.3d 428, 431 (6th Cir. 2003).  The Sixth Circuit found that
the language of §922(g)(8) is plain, and reasoned that where the
language of a statute is plain, "the sole function of the courts
is to enforce it according to its own terms."  Id.  The court
reasoned that though narrow, the proof requirement for a
§922(g)(8) hearing meets due process requirements.  Id.  According
to the Sixth Circuit, in order to prove that a §922(g)(8)
"hearing" occurred, the government is required prove beyond a
reasonable doubt that: (1) the defendant was given actual notice,
and (2) the defendant was given an opportunity to participate.
Id.  As stated, the parties have stipulated to "actual notice" in
this case.

"Opportunity to participate" is satisfied where the
defendant was given an opportunity in court, ***whether in person or
in writing***, where he ***could have*** presented reasons why the court
should not enter an order finding that he posed a credible threat
to the safety of the petitioner.  Id.; See Reifler, 39
Cal.App.3d 479.

24

78.   The Fifth Circuit concluded a hearing within the meaning of §922(g)(8) requires only: (1) actual notice, and (2) an opportunity to participate.  United States v. Banks, 339 F.3d 267, 270-71 (5th Cir. 2003).  Whether the defendant utilizes the opportunity to put on evidence is not determinative of whether a §922(g)(8) hearing took place.  Id. at 271.

79.   The Seventh Circuit made a ruling similar to Banks in United States v. Wilson, 159 F.3d 280 (7th Cir. 1998), when it considered a due process challenge to the defendant's §922(g)(8) conviction.  Even though no proof was presented, the Seventh Circuit found that the defendant was afforded the opportunity, either in person or in writing, to be heard at a "meaningful time and in a meaningful manner."  Id. at 289-90, 291.

78.   In another federal case, United States v. Falzone, 1998 WL 351471 (D.Conn.), the district court examined the issue of whether a defendant in a §922(g)(8) prosecution had the "opportunity to participate," within the meaning of §922(g)(8). The district court noted, "due process requires notice and an opportunity to be heard before a person may deprived of life, liberty, or property by law."  Id. (citing Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 313 (1950).  The district court went on to state that the "...due process clause will not proscribe the authority of the state to regulate procedures under its criminal laws unless the state practice '...offends some principle of justice so rooted n the traditions and conscience of our people as to be ranked as fundamental.'" Id. (quoting Speiser v. Randall, 357 U.S. 437, 445 (1958)).  The district court also stated, "due process is not vitiated if a

1   person fails to take advantage of an existing opportunity to

2   participate." Id.

3       80.   Judge Pollard did not violate any of the

4   provisions of the ADA in her handling of defendant's case.

5       81.   Judge Pollard acted well within her discretion to

6   deny the defendant's requests for counsel, for a facilitator, for

7   a continuance, and for a contested hearing.

8       82.   In light of defendant's responses which he filed

9   November 12 and 18, 2002, which were unintelligible within the

10  context of this case, and did provide a valid legal response to

11  Ms. Lingan's motion to extend the December 1999 restraining

12  order, Judge Pollard's ultimate decision that the defendant

13  defaulted was appropriate.

14      83.   The "minimum requirements of §922(g)(8) comport

15  with the requirements of due process," in that it requires: (1)

16  actual notice and (2) an opportunity to participate.  See Calor,

17  340 F.3d at 431.  Further, the boundaries of §922(g)(8) will be

18  protected by this Court.

19      84.   This case is analogous to a prosecution under

20  §922(g)(1) in that a defendant's attempt to collaterally attack a

21  predicate felony is a matter of law, not fact.  United States v.

22  Lomas, 30 F.3d 1191, 1193 (9th Cir. 1994) rev'd on other grounds

23  in United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir. 2001);

24  See also United States v. Engesser, 788 F.3d 1401, 1404 (9th Cir.

25  1986), superceded by statute on other grounds as stated in United

26  States v. Dhams, 938 F.2d 131 (9th Cir. 1991)(whether a defendant

27  may collaterally attack a predicate felony conviction in order to

28  assert a defense to a charge violating §I201 (precursor statute

26

1  to §922(g)(l)) is a question of law); <u>Lewis v. United States</u>, 445

2  U.S. 55, 63-65 (1980).  Even a prior conviction that is subject

3  to collateral attack on the basis of being constitutionally

4  invalid may nevertheless serve as a predicate felony for a

5  §922(g)(1) conviction. <u>Lewis v. United States</u>, 445 U.S. 55, 65

6  (1980).

7        85.  In <u>United States v. Padilla</u>, 387 F.3d 1087, 1090

8  (9th Cir. 2004), the Ninth Circuit held that the district court

9  was within its discretion to deny defendant's motion for a new

10 trial despite the fact that the predicate state conviction to a

11 §922(g)(1) prosecution was vacated by the state. In <u>Padilla</u>,

12 approximately six months after the defendant was convicted of

13 violating §922(g)(l), the Los Angeles County Superior Court

14 entered an order vacating the defendant's prior and predicate

15 state conviction *nunc pro tunc* to the original date of

16 disposition.  In finding that the state court's *nunc pro tunc*

17 order had no effect on the validity of the federal conviction,

18 the Ninth Circuit stated:

19        Lewis teaches that 'a contested felon [must] challenge
         the validity of a prior conviction or otherwise remove
20       his [firearm] disability, *before obtaining a
         firearm.*' ... *the only relevant circumstance for
21       present purposes is Padilla's status as a convicted
         felon at the time he possessed a firearm.*

22

23 Id. at 1091 (quoting <u>Lewis</u>, 445 U.S. at 67)(emphasis added). <u>See</u>

24 <u>also</u> <u>United States v. Marks</u>, 379 F.3d 1114 (9th Cir.

25 2004)(reversing and remanding district court's dismissal of

26 §922(g)(1) indictment on defendant's argument that predicate

27 state felony was unconstitutional); <u>United States v. Johnson</u>, 988

28 F.2d 941, 945(9th Cir. 1993) (affirming §922 (g)(1) conviction

despite defendant's claim that his state court felony was reduced
to a misdemeanor upon his completion of probation because on the
date he was found to possess a firearm, he was a convicted
felon); United States v. McCroskey, 681 F.2d 1152, 1153 (9th Cir.
1982) (*per curium*) (finding that a state order which later
expunged *nunc pro tunc* defendant's predicate state conviction did
not warrant dismissal of §922(g)(1) indictment because the
defendant had not cleared his status before being restrained
against potential violence).

     86.   As the Ninth Circuit stated in Padilla, this Court
must look at the defendant's status **at the time he was found to
possess firearms**.   Padilla, 387 F.3d at 1091 (emphasis added).
Thus, as is the case with previously convicted felons, if
defendant desired the right to possess firearms he should have
attacked the validity of the state court order *before* continuing
to possess his firearms which was both in violation of the law
and in violation of the state court's order.

     87.   The government has met its burden of showing
beyond a reasonable doubt that the defendant had an "opportunity
to participate," in the hearings before Judge Pollard, within the
meaning of Title 18, U.S.C. §922(g)(8) for the following reasons:

     (a)   The defendant received actual notice of the
hearing from which the predicate order issued, at which he, at
his own request, appeared via telephone;

     (b)   Though considered by Judge Pollard, the
defendant's "response" was not intelligible and was properly
determined to be "non-responsive" by Judge Pollard;

     (c)   When given the opportunity to state a reason

for contesting the extension of the 1999 order and for requesting
the continuance of the December 1999 restraining order, and
requesting a further hearing, the defendant failed to participate
in any meaningful way and indicated to Judge Pollard that his
defense strategy was going to be an attempt to collaterally
attack the previous restraining orders;  because this was beyond
the scope of the task before Judge Pollard, there was a fair and
reasonable basis to deny the defendant's requests for continuance
and for trial;

        (d) Judge Pollard credibly testified that it was
her practice to require a basis to extend a previously issued
restraining order and that she would not have granted the
extension merely because Lana Lingan requested the order;  and

        (e)   The application, motions, declarations and
related documentation filed on behalf of Lana Lingan by Attorney
Karen Easter Gurwell, provided a substantial basis for Judge
Pollard to conclude that Ms. Lingan's continued fear of the
defendant was reasonable, and that therefore an extension of the
previously issued order pursuant to California Family Code §6345
was appropriate.

        88.   Ritchie v. Konrad, 115 Cal.App.4th 1275 (2004),
cited by defendant, is not on point.  In that case, the judge
thought he had no choice other than to grant a §6345 extension if
asked, and failed to provide a record that showed that in any
case the need for continued protection was reasonable.  This case
is distinguishable in that Judge Pollard knew she could say no to
the moving party, and because, unlike the court in Ritchie, she
created a record which evidences that her ruling extending the

29

1  1999 order advanced the intent of the legislature, that is to

2  prevent future incidents of violence where appropriate and where

3  reasonable

4         89.  The fact that part of the proceedings in the

5  Placer County Superior Court on November 12, 1999 were held in

6  chambers with defendant's attorney, but not defendant himself,

7  present did not invalidate the court orders which followed that

8  hearing, nor was defendant permitted by law, either in the Orange

9  County proceedings or in the proceedings in this case, to have

10 the Placer County order declared null and void based upon that

11 fact.

12         90.  Defendant's attempt to directly and collaterally

13 attack the validity of the Amended II predicate restraining order

14 is outside the scope of §922(g)(8), not relevant, and provides no

15 legal defense to this crime.

16         91.  For the foregoing reasons, the government has met

17 its burden of proving beyond a reasonable doubt each of the

18 elements necessary to establish that the defendant violated Title

19 18 U.S.C. §922(g)(8), and the defendant is therefore adjudged

20 GUILTY of the offense charged in the Indictment.

21 DATED:  August 15, 2005

22

23

24 _____
   WILLIAM B. SHUBB

25 UNITED STATES DISTRICT JUDGE

26

27

28

                              30